23-2361, and each side has 15 minutes. Good morning. Good morning, Your Honor. May it please the Court. My name is Kari Hong. I'm from the Florence Project, and I represent Petitioner Jeroni Reneau. I will reserve two minutes of time. I will watch the clock. Okay. Starting, and I will talk about Mathis, Miller v. Gamme, and then California state law. Starting with Mathis, Lopez Marroquin explains that before Mathis, this Court got it right when analyzing whether an elements-based statute was divisible or not. But before Mathis, the Ninth Circuit routinely erred because it would presume that a disjunctive list would be divisible. After Mathis, the Court instead looks at state case law statutes and then a peak of the record to figure out whether a disjunctive list is divisible or not. In the 273.5 statute, California has a disjunctive list of which relationships to the victim are included under that crime. The old precedent never applied Mathis. Instead, Cervantes and the two other cases it cited had just looked at the disjunctive list and presumed it divisible, which this Court can no longer do. Can we look at 273.5? It defines cohabitants and has specific factors that you have to look at, whether there was a sexual relationship, the sharing of income and expenses, whether they were holding themselves out as domestic partners, the continuity, the length of the relationship. And then you cited People v. Vaca, and that was a sufficiency of the evidence challenge on the cohabitant element. So I — it seems this is an element that actually has to be proven at trial. The relationship, however, is spouse, former spouse, cohabitant, former cohabitant, the mother or father of his or her child. That is what the statute is. And in the three cases, People v. Biddle — But the jury has to find one of them. If you look at People v. Vaca, it says, you know, in this appeal he argues that the evidence was insufficient to support the conviction under Section 273.5 with respect to the cohabitant element. And it goes through all of the evidence that you have to consider as to whether there was sufficient evidence for a jury to reach that conclusion, that there was a cohabitation relationship. How long were they together? Were there sexual relations? Where does he keep his belongings? Is — you know, who picks up the son from care? Who accompanies the victim to the hospital? It's all evidence that had to be presented for a jury to make that finding. But in People v. Vaca, if you look at he was charged not with being a cohabitant but with a spouse being a spouse or a cohabitant. Look, I see that first sentence, but look at every single sentence after that. This is like, you know, said in, what, Descamps. This was an element that the jury had to find. Otherwise, why would they go through all this discussion about where are his belongings? How long have they been together? When was the last time they had a sexual relation? This was all evidence for an element. When there's a disjunctive list, the jury has to find one of those relationships, but it doesn't have to agree on all of those — on — six of the jurors could have concluded he was a spouse, six could have concluded he was a cohabitant, and he only contested the evidence to the cohabitant. He never contested that he was a spouse. Where in Vaca does it say the question before the jury was whether it was a spouse versus a cohabitant? Because I don't see that in this case. The question is, was it a cohabitant or a nothing, just an acquaintance? Well, it mentions that he was charged with being a spouse or cohabitant. And if you also look at Leach, you have the same situation where he was convicted and the indictment listed the victim as being, quote, the cohabitant or mother of the child. And there the collateral challenges were to the denial of motion and limine. And likewise, under Biddle, he was convicted of, quote, being a cohabitant or the children's parent. And in those cases, when the California case law is defining the element, it never lists the relationship as a separate element. Well, at the 2013 jury instruction, it says the defendant is charged with inflicting an injury on his or her former spouse, cohabitant, the mother, the father of his or her child, and that resulted in traumatic condition in violation of 273.5. To prove that the defendant is guilty of the crime, the people must prove that, one, the defendant willfully and unlawfully inflicted a physical injury on his or her former spouse, cohabitant, and the injury inflicted by the defendant resulted in a traumatic condition. Well, Your Honor, there has to be proof at the trial, but there is no jury unanimity that it has to be one of those particular relationship groups. There is no California state court case that has ever decided that. Well, let's just say, okay, if we conclude Cervantes is not binding, we could remand it to the BIA to determine divisibility in the first instance, or couldn't we determine divisibility here? Absolutely, and the court's case does that again and again. Under Lopez-Moroquin, that was a similar situation where there was a disjunctive list. Didn't I dissent there and lost? Well, it did, but you never contested whether the court could decide it. You just disagreed about what the case law said, what California case law said about what it was. So I guess what I'm trying to decide is there might still be a way that your client could lose if we decided the divisibility issue right here. Yes, and my argument to the court is that in Miller v. Gami, this is absolutely something that should be revisited in light of Mathis, and this court is best situated because divisibility is a legal question. And so this court should decide it, however it comes out. My argument then, looking at California case law, that there is no California state court case that has said that this is an element, and then of those three-sided cases, if you look at the end, they are convicted of or. So there was no jury unanimity. But I'm wondering, but it probably doesn't make sense to publish because they've changed the statute since this one. Correct. I mean, this is really an old case. It's a very old case. Like 12 years. Yes, yes. Vizcarra-Ramirez is an unpublished case, and that's doing exactly what I'm asking the court to do there, which is to overturn the precedential decision, apply Miller v. Gami, makes it irreconcilable, and then applying Mathis to the disjunctive list. But the cases that you cited for your Miller v. Gami proposition, Robinson and Vizcarra-Ramirez, they look distinguishable to me because in those cases they didn't even at all mention whether the statutes were divisible or not. And Cervantes specifically said it was divisible. So how should we — I don't think I could rely on Robinson and Vizcarra-Ramirez for that purpose. Lopez-Maracuena is the best example because there the precedent was decided after DeCamp, just like this case, but before Mathis. And this is where the proposition explains, I think does a very great job of explaining the role that Mathis has, which is DeCamp explained that elements-based statutes are going to be divisible, but Mathis explained what we do with disjunctive lists. And the disjunctive list is what 273.5 has. And Lopez-Maracuena dealt with that intermediate period between DeCamp and Mathis, which is exactly what we have in this record. And what's key there is that, yes, Judge Callahan, there was a disagreement between the majority and the dissent on California state court law. And I would submit that the same thing here is that there is no clear state Supreme Court case on point. And the jury instructions, although there are brackets, unlike — as you know with jury instructions, with the California jury instructions, at times they will direct the jury when it has to be mandatory, and there's no such requirement under these jury instructions that it has to — I don't know, but there's no requirement. And we know — excuse me for interrupting. We know it's not required because in those three-sided cases, there was an or. It was spouse or cohabitant, former cohabitant or, you know, it was both of those relationships were listed. So the jury unanimity was not required for the three convictions that were found under Vaca, Biddle, and Leach. I don't want to be rude, but it seems like that another thing I think that the government brought up was that clearly this is domestic violence, and it's your position that they're raising this for the first time here, whether it's a CMIT, I guess, or whether — it just doesn't seem — I don't see an avenue for your client to win. If it's the former cohabitant, and actually — No, but I mean — but there's another — isn't there another way that your client can lose if this is just domestic violence? Well, Your Honor, the issue here is that this was in the master hearing. He was asked whether it's a domestic violence offense, and as this Court knows, there's 273.5 under California law, but there's also 243, which is a domestic violence offense, which is not a CIMT. But even if it is a CIMT — well, if it's indivisible, we win there. Well, right, but if it's divisible, then that's a — but then — but I think what the government's saying is they're raising an alternate argument, saying, well, it doesn't really matter because it's a crime — no one can really dispute that this is a crime of domestic violence under Carrillo v. Holder. So — The agency has to make that finding. And that's your argument on that. And so that would need to be a remand. So what we're asking for is for this Court to find it indivisible and remand it because we've never had a hearing on cancellation and also adjustment, and he would be eligible both under adjustment and cancellation. But I'm understanding you, if we found it divisible, we could also decide it right here. Correct. Without a remand. Well, with the remand, we still have — if it's — we still need to look — if it's divisible, it still needs to be remanded because we have no conviction records. This was a situation where the DHS attorney said, yes, he was convicted. But your client admitted it. And it just seems like you're hiding behind the fact that your client has not provided any of the documents, even though he bears the burden of proof to show that he's eligible for cancellation. That's one thing that — it seems a bit odd here and somewhat inconsistent with Pareda. He was — That your client is saying, I'm not going to provide any of the documents of my own conviction, even though I bear the burden. He was — in 2013, when this happened, he was pro se and detained. He's had so many opportunities to provide those documents, and he repeatedly hasn't, even when he's been counseled. Your Honor, in — it stayed at the Court in the first petition purview for seven years because that is where the Court was going back and forth with about who had the burden before Pareda, with the Ninth Circuit cases and the en banc. But on remand, he filed an application for cancellation, and the instructions ask if you had any criminal convictions. He said yes, and he was asked to provide details, and he did not, nor did he provide any documents. That was 2013. And that was when he filed for the cancellation and the adjustment, when he produced the two applications. Then for seven years, and even the docket of the prior case, the docket itself says that in light of the change of the law, we're going to remand this for Pareda. And the joint statement produced by the parties said we were only going to deal with legal issues. The factual issues are things that need to go before the IJ, and he's never had a full counseled hearing to present those applications. The BIA is not a fact finder. So that — all of that should be remanded, whether the Court finds this divisible or indivisible. The proper remedy is to send this back to a hearing for the fact finding in the first instance, which he's never had. And yes, there was that delay, but that was during the uncertainty about who has the burden. So it made no sense for him to produce it before it was clearly established about which party had the burden. So do you want to save the balance of your time? Yes, Your Honor. Thank you. Thank you. All right. We'll hear from the government. Good morning. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the Respondent. The Court has asked us to focus today on two questions. Whether Cervantes continues to bind this Court on the question of divisibility of California's domestic abuse statute. And second, if not, whether the Court should remand for the agency to conduct a divisibility analysis. And we have two bottom-line answers to these questions. First, yes, Cervantes continues to bind this Court on the question of divisibility – panels of this Court on the question of divisibility because it is not clearly irreconcilable with Mathis. So Petitioners, welcome to challenge Cervantes, but that must be done en banc. And then second, even should this – But if they didn't even perform the analysis, didn't even mention discounts, which was decided before Cervantes, how can we say it's not clearly irreconcilable? I think – I think you provided the answer yourself, Your Honor. Looking at the face of the decision, admittedly, Cervantes said nothing about descamp, but that also means that there's nothing on the face of the decision. It also said nothing other than we think it's divisible based on two prior precedents. That's all it said.  There was no analysis, right? You would agree it had no analysis. There's no question. There's no question, Judge Koh. And I think what's central to our position here is we readily acknowledge that Cervantes did not cite or mention descamp in its decision. But that doesn't change the fact that descamp was the controlling divisibility law at the time that Cervantes was decided. In fact, by that point, this Court had already issued its own post-descamp precedent incorporating descamp treason, and that's the Court's decision in Rendon. So we don't deny that Cervantes didn't cite descamp, but the question for Miller v. Gamey purposes is whether there is higher intervening authority. And descamp is certainly not intervening authority. It was there at the time. Well, the Petitioner appellant relies heavily on Lopez Marroquin and in support of the argument that we are not bound by Cervantes because Cervantes is clearly irreconcilable with Mathis. Why isn't the Petitioner right on that? That's right, Your Honor. And I think so there's two critical distinctions with Lopez Marroquin, and we just filed this and identified these in a 28-J response last week. The first one is there, unlike here, there was actually reasoning in the prior precedent. In that case, it was Duenas-Alvarez, not the Supreme Court's decision. It was this Court's panel decision in Duenas-Alvarez in 2013. The reasoning in that decision, which was provided, relied solely on the fact of disjunctive listing in a statute to find divisibility. It said because the statute lists these terms disjunctively, that means divisible. And that is the exact principle which is, we readily acknowledge, clearly irreconcilable with Mathis and Descamp because those decisions said you cannot rely solely on disjunctive reasoning to say that a statute is divisible. But let's just for hypothetically. That's just one, Your Honor. Hypothetically. Assume that if we say we're not bound by Cervantes. Yes. Why should we read Section 273.5 as divisible? And should we do it, or should it go back? So two parts to that, Your Honor. We very clearly did not get into California law in our brief, and it's because we recognize that Miller v. Gamey is supposed to be a limited mechanism. We don't get into whether State law here. I know, but we're asking you to because what if we disagree with you on your threshold point? If you disagree with us, Your Honor, I think our bottom line position overall is that if you have any pause about relying on Cervantes, notwithstanding the fact that it is binding precedent, there's no reason to reach that second question. There's no reason to remand, for sure. This Court does not defer to the Board on divisibility. But there's no reason for this Court itself to reach the question of divisibility. And that is because Petitioner in all events remains separately disqualified from cancellation of removal because this same offense is a crime of domestic violence under the INA. Well, except that we would be denying on a ground that wasn't previously raised by you. Now, I know that counsel for Petitioner is saying, I'm not sure that it's forfeited, I'm not sure that you can't bring it up there, but it clearly hasn't been part of this case. It's not like a summary judgment where we can affirm on any ground. Well, respectfully, Your Honor, that's not true. And for the same reason that divisibility is not something that this Court needs to send it back to the agency on, the very same reasoning applies to something like the determination whether an offense qualifies as a separate disqualifying ground, here a crime of domestic violence. There's no deference to the Board on construing State law. And for divisibility, by the way, you guys, this panel is asking whether we're okay for this Court to reach the first instance. We say, absolutely, you can reach this new question. In that context, when we talk about the – Okay, but the BIA didn't reach the domestic violence, correct? Correct. All right. So what is your best authority that we can reach it here as an alternative? Effectively, it is a futility argument, Your Honor. If this Court were to send this decision back, the Board would be foreclosed in ruling on Petitioner's cancellation application because the Board could not even consider him eligible because this crime qualifies under this Court's precedent. Because a lot of times I think people are going to lose, but I have to send it back for the agency to do it in the first instance. That – but respectfully, Your Honor, if we – So why isn't this one of them? It's a well-recognized exception to Chenery, Your Honor, that if it would be futile to remand because the same exact result would be inevitable, and it's not a question that the agency gets any deference on. It's a matter of construing state law. And again, this is not we're asking for the BIA to look at it first. This Court has already answered that question. All right. Let me make sure how – that I understand your roots to denying. First, you're saying that we're bound by Cervantes, therefore. Correct. But if we don't agree with that, you're – that Cervantes is binding. Then you're saying you still win because the statute is divisible and that we can make that determination in the first instance. And if that doesn't work, then it's a crime of domestic violence under the futility argument. I would just swap those a second, too, Your Honor. And that's because, yes, we believe, as we said in our brief, Cervantes first, and that's the easiest and cleanest way to win. If the Court has any pause about applying Cervantes here and thinks that you might want to recognize the Miller v. Gamey exception, that's where we say there's no reason to break any new ground and look at the divisibility of the statute when, under all circumstances, Petitioner remains foreclosed from cancellation of removal because of a crime of domestic violence. So that would be our second route. Did you forfeit an argument on divisibility? You didn't respond substantively. Your Honor, we believe under Miller v. Gamey that that is exactly what this Court cannot and should not do, is relitigate a claim that is already foreclosed. Now, this is exactly Petitioner. It's not — it should be very clear about this. We're not saying that the Court can't look at divisibility. Again, we're just saying at the panel stage they cannot. The proper forum for raising that claim is en banc. And, Judge Callahan, if I could come back, this actually segues to the second answer to the question about Lopez-Maracan. In that case, the second distinction is that there the panel did try to take the issue en banc first, recognizing that it was not appropriate to resolve that claim at the panel stage, but there was not a majority of active judges to rule in favor of that. And so the Court ended up ruling on it at the panel stage. So I recall. Yes. I'm sure you remember that well. So that's your question, Your Honor. Of course, this Court can reconsider the divisibility question if it believes that does — or Mathis was intervening precedent. But you do that at the en banc stage. Miller v. Gamey is meant to be a limited tool. But you're putting all your eggs in one basket, right? That we are going to agree with two.  Your futility basket is out there as well. Yes.  But, okay, so on the Cervantes issue, no, it's not — Miller v. Gamey doesn't apply. But you can argue in the alternative because they made a full-throated substantive argument on divisibility, and you didn't respond to it. So — Your Honor — sorry. Sorry to interrupt, Your Honor. So it seems like forfeiture. Your Honor, we routinely do raise divisibility arguments before this Court on the first instance. When we don't, I don't, and we very commonly don't, is where that issue has already been resolved by this Court. So if we put our eggs in that basket, and sure, I think we did, it's because we are not trying to get in the way of what Miller v. Gamey is supposed to hold for this Court, which is we do not at the panel stage relitigate questions that have already been decided. If this — if the prior precedent here, Cervantes, had been issued before — before Deskamp, we would have — we would have at a minimum gotten into California law to talk about why this decision is still defensible and that those alternatives are elements. But here you are talking about a post-Deskamp decision. This Court has already said that Mathis did nothing to change the rule in Deskamp. It just restated what had already been said at Deskamp. And in under those circumstances, to get into California law is exactly what we think Miller v. Gamey prohibits. We're — Judge Koh had a question. I'm a little bit confused about your third argument on divisibility. You're saying you can't — we shouldn't look at this because the claim is already foreclosed. And by that, are you referring to your second argument, that you think because Mr. Reneau conceded that it was, you know, a crime against his spouse? I guess I'm still unclear on how — you're refusing to address state law. Correct. You're giving us no response on Vaca or Leach, which to me means you're probably conceding, right, if you're not going to address it. And then you're saying, but I don't see how you win on whether — if we have to address divisibility, if you're not going to give us a state law argument. To be clear, Judge Koh, our position is if the court wants to — if the court believes that it's a — the Miller v. Gamey exception applies here, then the second route is the alternative crime of domestic violence disqualification, right? So that — I mean, really, our arguments are just two, and it's in response to this Court's — the issues that they — that it directed us to focus on today. So the second position is if the court thinks that Cervantes is no longer binding in light of Mathis, then we rely on the alternative ground that this offense, under all circumstances, remains a crime of domestic violence. So we don't provide any alternative divisibility analysis of our own. So you're saying he, Mr. Renaud, cannot litigate it because he conceded that the abuse that he was convicted of was against his spouse? Is that your foreclosed claim argument? I'm sorry, I'm still unclear on your position. I'm sorry. Are you saying if this Court does turn to divisibility and it's self-determined as divisible on its own — on its own in a new analysis, then what would happen? I thought earlier in response to Judge Callahan's question, you said our third argument is that if you reach the divisibility, Mr. Renaud can't litigate that claim because it's foreclosed. And I'm just trying to get clarification on what you mean by that. No, I'm sorry. I was raising that. That's part of the first argument. When I said — I was just saying that the only way to reach that would be en banc. It's foreclosed at the panel stage. So, sorry, there was no third argument. Yes, that was part of — if I'm remembering correctly, that was part of a response to why we didn't provide divisibility analysis now at the panel stage. Tell me how the fact that he admitted that he had been convicted of the crime. Tell me what — and he has the burden on cancellation of removal. Correct. How — how do you — how do you — does that fit into the analysis here? So that is — that testimony in which he admitted the conviction then gives this court the evidence that he has been convicted of this crime under 273.5, spousal abuse. That then disqualifies him from cancellation of removal, because under this cancellation statute, if you are convicted of one of these several different grounds, disqualifying offenses, including, as relevant here, crimes involving moral turpitude, you are not eligible for cancellation or removal. Now, if as part of your question you're asking the divisibility point — Well, I guess is what you're saying, but then we would have to determine that it was — that it's divisible and that it was a CIMT. Correct. And then you would say the evidence of that was his admission. The evidence of the fact of the conviction, yes. So you would be relying on a testimony, this is why we sent this case or agreed to send the case back after Pareto. Because we don't really actually have a record developed on that. Correct. That's right. And I'm happy to talk more about that, but I think it's very clear at this point, and we're happy to rest on the briefs if you don't have specific questions about it. But Pareto makes clear in this Court subsequent precedents make clear that you can rely on testimony. Petitioner testified and has conceded throughout this litigation until that remand that he was convicted of that offense. But some of the problems here are how long this has gone on and how much law has happened in the interim. I don't disagree, Your Honor. That happens occasionally. In this case, you had the additional layer of Pareto came out right maybe around the time that the panel might have been ready to calendar this for argument. And I should note Pareto, I think, has been very clearly settled. The question of testimony and reliance on it and what you do with an inconclusive record, we still remanded at that point just to be crystal clear and to let the Board have the first opportunity to speak to Pareto. It did. That's now clear. So we think that portion of this and whether there's a conviction is clearly established. Earlier, you said Ninth Circuit law has held that Mathis didn't change anything after Discamps. What were you referring to? The Court's decision, its en banc decision, Martinez-Lopez. And in that decision, we cited in our brief, I can give you the page number. In fact, I will. I believe it is around 3036, I believe. But Martinez-Lopez, 35. Mathis did not change the rule stated in Descamp. It only reiterated that the Supreme Court meant what it said when it instructed courts to compare elements. And, Judge Koh, I should be clear. Mathis did make changes in other courts. But the way this Court had already ruled after Descamp and then in Rendon in particular was that Mathis didn't change anything. This Court had already been consistently interpreting Descamp properly, we think, to only deem a statute divisible if its statutory alternatives were elements rather than means. There had been some conclusion in other courts as to whether that's actually how you proceed. This Court had been doing it consistently. That's why when Mathis came out, it just restated what this Court was already doing. And that's why Martinez-Lopez said what it did. So I'm confused by something in your argument. You're not presenting an argument based on State law to us today. But I thought in your brief, you contested their argument that we couldn't make a finding of divisibility based on anything other than a State Supreme Court decision. We contested that that's what Mathis said. I think counsel's argument was that Mathis said you can only rule that a statute is divisible if the State Supreme Court has said that. And that's very clearly not what any reading of Mathis has ever said, including by this Court. So we don't get into State law on the specific question of divisibility here. But that argument is just about what Mathis said and what you can look at for purposes of the divisibility analysis in general. Right, which would seem to be relevant if we were going to look at VACA, because it's not a Supreme Court decision. Yes. We were going to conclude that based on VACA, this is a divisible statute. Yes, Your Honor. Of course, our position is clear on whether this Court should get in at the panel stage to California law. But there's no question that less than State Supreme Court law is relevant to the divisibility analysis. We rely on those authorities all the time in our own arguments. All right. Unless many of my colleagues have any questions, your time has expired. Thank you, Your Honor.  I have three points. Cervantes did exactly what the government said. The Cervantes said it was a mistake and an error when finding that 273 was divisible and saying that the judicial admission was enough to prove whether, under the modified statute, it was. So the first error, even if this Court finds it divisible, the proper remedy is remand for the Court to actually look at conviction documents and not the admissions. And that's at 589 in Cervantes. The second point is under Lopez-Marraquin cites Martinez-Lopez. And Lopez-Marraquin makes it very clear that Mathis clarified that with disjunctive statutes, there was a mistake for this Court to presume them divisible. Rather, there has to be an inquiry into the State law, which is what Mathis created new framework for. And the third issue is that the Court has never provided a cogent theory as to why California State law says that 273 is divisible. It did not do it in its briefing. It did not do it before the BIA. And it did not do that here in argument. Can you answer, it does seem in your brief you are arguing that unless there's a State Supreme Court case on point. It does seem like you were making that argument, but Mathis clearly says the statute could be clear on its face, right? Yes, Your Honor. There are two different arguments. One, today I focused on looking at this Court's existing divisibility analysis. We win. A second pathway is the way that six other Federal circuits have done so, which is where they say if there has not been a State Supreme Court that has clearly already identified whether a statute is elements or means, which is what happened in Mathis, there's no need to even guess. But Mathis doesn't require that. Mathis does not require that. And the Court does not have to engage into that other analysis. No, but we don't have to have a State Supreme Court case on point. Right. And actually Mathis says there are three points. You look at the statute for different punishments, which is not here. You can look at the case law. And then lastly, the peak of the record. All right. There don't appear to be additional questions. Thank you both for your argument. This will be submitted. I always, we appreciate everyone that appears, but we also always like to acknowledge our pro bono counsel for, that's very helpful to the Court, and particularly in matters where, you know, the petitioners can't afford to hire counsel and we have these meaty legal issues that continue on and on and on. So we thank both of you for being, and a special thanks to pro bono counsel. This matter will stand submitted. Santiago Ramirez v. Bondi, 23-2874. That was submitted on the briefs, will be submitted as of this date.
judges: CALLAHAN, BADE, KOH